IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRADFORD BOONE and CHRISTY BOONE,

    Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

Case No. 21-CV-00432-GKF-SH

**OPINION AND ORDER**

Before the Court is Plaintiffs' motion to exclude the expert testimony of Michael Berryman ("Berryman").[1] Plaintiffs complain that Berryman's opinions are unhelpful to the trier of fact and rely on insufficient bases. These arguments, in general, ignore the applicability of Berryman's opinions to essential questions of causation and damages. The Court further finds that the opinions rely on an adequate factual basis. Plaintiffs' motion will be denied.

*Background*

This diversity case involves claims for breach of contract, bad faith, and constructive fraud arising from an insurance claim Plaintiffs made on State Farm. (ECF No. 12.) Plaintiffs Bradford and Christy Boone (the "Boones") allege that, in April 2020, their home and roof were damaged by wind and hail, and they later submitted a claim to their insurer, State Farm. (*Id.* ¶¶ 9-10.) Plaintiffs assert that State Farm conducted

---

[1] Plaintiffs phrase their motion as one to "strike" the expert report itself. However, the substance of Plaintiffs' motion indicates it is intended as a traditional *Daubert* motion, rather than one seeking to strike the report as untimely or for another procedural flaw. *See, e.g., Brambl v. Geico Gen. Ins. Co.*, No. 10-CV-474-TCK-PJC, 2011 WL 5326076, at *8 n.9 (N.D. Okla. Nov. 4, 2011).

inadequate and delayed inspections of their property and offered inadequate compensation. (*Id.* ¶¶ 11-21.)

Throughout the claims process, Plaintiffs used the services of their contractor, Bedlam Construction ("Bedlam"), and a public adjuster, Express Estimators ("Express"). (ECF No. 62 at 2.) According to Plaintiffs, after a September 2020 inspection, the State Farm adjuster told Express "it was a 'full buy,'" which Plaintiffs, Bedlam, and Express "assumed meant that State Farm was going to pay for the entirety of the claimed damages to the dwelling, pool house, and carport." (*Id.* at 2-3.) Plaintiffs then hired Bedlam to perform various repairs. (*Id.* at 3.) After these repairs began, State Farm provided its first payments on Plaintiffs' claim, totaling $25,822.04 in October 2020. (*Id.*) After the repairs were complete, in December 2020, Plaintiffs assert they returned to State Farm "to ask about the status of the claim and remaining items of payment." (*Id.*) The claims process then continued through 2020 and into 2021 (*Id.* at 3-4; ECF No. 62-2), with Plaintiffs retaining counsel in January 2021 and filing suit that September (ECF No. 62 at 4; ECF No. 2-2).

In August 2022, State Farm hired Berryman to perform an additional inspection of Plaintiffs' property. (ECF No. 62 at 4; ECF No. 77 at 1-2.) In September, Berryman provided his own estimate of Plaintiffs' claim. (ECF No. 77-1.) By December 2022, based on Berryman's estimate, State Farm stated that a supplemental payment would be issued to Plaintiffs, and a payment of $33,232.54 was issued in January 2023. (ECF Nos. 77-3, 77-4.)

In March 2023, State Farm also disclosed Berryman as an expert witness in this litigation. (ECF No. 62-1.) Berryman's March 2023 report is the subject of Plaintiffs' motion. The report is based on Berryman's August 2022 inspection, as well as his review

2

of several documents and deposition transcripts. (*Id.* at 1-3.) Berryman intends to offer testimony regarding (1) the extent of storm damages occurring on the date of loss, as well as the expected repair costs; (2) the reliability of Bedlam's damage estimate and its performance as the property restoration contractor; and (3) the reliability of Express's damage estimates. (*Id.* at 10.) Berryman summarizes his three opinions as follows:

> **Opinion #1**: The roof systems on the home, detached carport, and pool cabana were impacted by hail over their service lives. The hail was of sufficient size to cause minor, cosmetic denting to the gutter screens, some downspouts, and the copper chimney flues; but the hail's size was too small to cause damage to the roofs' 30-year laminated asphalt roof shingles or the pool cabana's modified bitumen roof. *The home's roof was wind damaged, but the roofs of the detached carport and pool cabana were not. The home's interior damage was limited to the Northeast Bedroom ceiling and possibly a portion of the Formal Living Room ceiling. The interior work undertaken by Boone was excessive.*
>
> **Opinion #2**: Based upon my direct experience as an insurance restoration contractor, *I believe Bedlam did not adhere to their contract or industry standards and common practices as Boone's contractor-of-choice (COC) in this matter. Bedlam failed to cooperate with State Farm in the manner to which I am accustomed and they failed to keep their customer, the Boones, properly apprised during the property restoration process. The repair scope of work Bedlam undertook was excessive and went beyond what was required to address storm damages.*
>
> **Opinion #3**: The [Boones] . . . engaged the services of a public adjuster, Express Estimators (Express). Express created damage estimates in this matter dated 8/17/20 and 8/18/20. *Neither estimate can be used to determine the necessary cost to restore the property to its pre-loss condition.* The estimates neither support the [Boones'] claim nor do they support the scope of work or cost claimed by the [Boones'] contractor, Bedlam.

(*Id.* at 21-22, 24, 32) (emphasis added).

Plaintiffs have moved to exclude Berryman's opinion and testimony.

*Analysis*

I. **Standard of Review**

An analysis of Plaintiffs' motion starts with Rule 702, which currently provides as

3

follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[2]

Rule 702 "imposes on a district court a gatekeeper obligation to 'ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). This requires the Court to first determine "whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (internal quotation marks and citation omitted). The Court must then determine "whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Id.* at 1283 (quotation omitted). As the Advisory Committee has recently emphasized, the Court must find the testimony is not only helpful to the trier of fact, but also that it meets the other three requirements in the rule—a sufficient basis of facts or data, reliable principles and methods, and a reliable application of those principles and

---

[2] Rule 702 was amended effective December 1, 2023. This amendment governs "insofar as just and practicable, all proceedings then pending." Prop. Ams. to the Fed. R. Evid., 344 FRD 850, 851.

methods to the facts. Fed. R. Evid. 702, advisory ctte.'s note, 2023 ams. ("The amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000 . . . ."). The party offering the expert testimony bears the burden of showing its admissibility. *United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

Here, Plaintiffs do not dispute Berryman's qualifications or the reliability of his principles and methods (or their application to the facts). Instead, in various ways, Plaintiffs argue that Berryman's opinions are not helpful and that he relied on insufficient facts.

## II. Helpfulness to the Trier of Fact

Most of Plaintiffs' arguments appear to fall into the category of helpfulness to the trier of fact. Namely, Plaintiffs argue that (1) an expert witness is not needed in this case, because State Farm did not need an expert when evaluating Plaintiffs' insurance claims; (2) Berryman's testimony would violate the principles of *Buzzard v. Farmers*, 1991 OK 127, 824 P.2d 1105, because he relies on information not considered by State Farm when handling Plaintiffs' insurance claims; (3) Berryman's testimony regarding the performance and estimates of Plaintiffs' contractors is not relevant; and (4) Berryman's opinions usurp the role of the trier of fact in evaluating the credibility of witnesses. (ECF No. 62 at 5-6.)

### A. Whether an Expert was Used in the Underlying Events

Plaintiffs first argue Berryman's testimony will not help the trier of fact, because "at no point did State Farm believe that an expert was required to investigate or evaluate the Plaintiffs' claim." (ECF No. 62 at 9.) As a preliminary matter, State Farm asserts that it did, in fact, hire Berryman to evaluate Plaintiffs' claim and even used his estimate to

5

provide additional insurance benefits to Plaintiffs.³ (ECF No. 77 at 3.) More importantly, however, Plaintiffs offer no legal basis for the assertion that a party can only hire an expert for litigation if they used an expert before the litigation began. The Court rejects Plaintiffs' argument.

### B. *Buzzard's* Post-hoc Prohibition

Plaintiffs next argue Berryman's report should be excluded under *Buzzard* because State Farm is using his expert opinion as a post-denial rationalization for denying Plaintiffs' claim. (ECF No. 62 at 5, 8.) That is, Plaintiffs assert that the "vast majority of materials" identified in Berryman's report "were not known to State Farm or not relied upon by State Farm at the time it evaluated the Plaintiffs' claim." (*Id.* at 8.) As a result, Plaintiffs argue, State Farm is using Berryman to "introduce evidence that supports a post-claims rationalization . . . ." (*Id.*)

Under Oklahoma law, bad faith insurance claims are focused on "whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *Thomas v. Farmers Ins. Co.*, 774 F. App'x 430, 432 (10th Cir. 2019) (quoting *Buzzard*, 824 P.2d at 1109); *see also Bright v. Ohio Nat'l Life Assur. Corp.*, No. 11-CV-475-GKF-FHM, 2013 WL 12130322, at *1 (N.D. Okla. Jan. 10, 2013) ("Under Oklahoma law governing bad faith insurance claims, defendants may not rely on opinions, theories or evidence they did not have at the

---

³ The Court, however, rejects any argument that Plaintiffs' motion should be denied—and the entirety of Berryman's expert opinions should be admissible—simply because he was also involved in the handling of Plaintiffs' claims. (*See* ECF No. 77 at 3 ("Clearly, Mr. Berryman's report and opinions in relation to his estimate are directly relevant to State Farm's claim handling, *especially since his estimate was used to support additional payment on Plaintiffs' claim*, and should be admissible.").) Instead, to the extent Berryman testifies as a fact witness under Rule 701, the district judge will be best positioned to address the parameters of any factual testimony, as opposed to opinion testimony.

6

time of the decision."). To determine claim validity, the insurer must make a "reasonably appropriate" investigation. *Buzzard*, ¶ 14, 824 P.2d at 1109. "Accordingly, 'the focus of a bad faith claim' is 'the knowledge and belief of the insurer during the time period the claim is being reviewed.'" *Thomas*, 774 F. App'x at 432 (quoting *Buzzard*, 824 P.2d at 1109) (alteration omitted).

Put another way, a bad faith insurance claim is "premised on the actual reason the insurance company gave when it denied the claim, not a post-denial rationalization. Therefore, evidence that supports a post-denial rationalization, rather than the evidence that the insurance company actually relied on when initially denying a claim, is inadmissible under *Buzzard*." *Thomas*, 774 F. App'x at 432. While a defendant may not introduce evidence as a post-denial rationalization, such evidence may be admissible for another purpose. *Bright*, 2013 WL 12130322, at *1 (holding expert reports admissible to determine whether certain medical records were material in the bad-faith insurance context but not for post-denial rationalization).

Here, much of Berryman's opinion goes to issues other than State Farm's alleged bad faith or any attempt to rationalize that bad faith. For example, Berryman opines extensively on the physical damage caused by the insured event, as well as whether the monies estimated for or incurred by the Boones was excessive. (ECF No. 62-1 at 21-24, 29-33.) This information is directly relevant to Plaintiffs' damages—which is an essential element of their claims. *See, e.g., Digital Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843 ("In order to recover on its breach of contract theory, [the plaintiff] needed to prove: 1) formation of a contract; 2) breach of a contract; and 3) damages as a direct result of the breach."); *Ball v. Wilshire Ins. Co.*, 2009 OK 38, ¶ 21, 221 P.3d 717, 724 ("The elements of a bad faith claim . . . are: (1) claimant was entitled to

7

coverage . . .; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty . . . was the direct cause of the claimant's injury."); O.U.J.I.-Civ. No. 18.2 (elements of fraud include that the plaintiff "thereby suffered injury"). Indeed, Defendant notes that Plaintiffs' expert disclosures include testimony by their public adjusters and contractors as to the reasonableness of costs incurred in the repairs.[4] (ECF No. 77 at 4-5.) If Plaintiffs' expert testimony is helpful to the trier of fact, then Berryman's rebuttal of that testimony would also be helpful.

The rest of Berryman's testimony goes to the adequacy of the performance of Plaintiffs' contractor. (ECF No. 62-1 at 24-31.) "The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala,* 303 F.3d 1207, 1219 (10th Cir. 2002). When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper." *Id.* As with the adequacy of the damages estimates, a layperson will not necessarily understand the standards by which contractors operate in these specialized circumstances. Moreover, this testimony also goes to the causation and extent of Plaintiffs' damages and is, therefore, similarly helpful to the trier of fact.

### C. Performance of Plaintiffs' General Contractor

Plaintiffs next argue Berryman's report and testimony regarding Plaintiffs' general contractor, Bedlam, should be excluded. (ECF No. 62 at 5-6, 9-11.) In his report, Berryman reviewed Bedlam's actions to determine its "overall . . . performance and

---

[4] Defendant's brief states that the expert disclosures are attached as Exhibit 6, but no such exhibit was filed. Plaintiffs, however, do not dispute the substance of these disclosures in their reply.

8

practices as a property restoration contractor." (ECF No. 62-1 at 10.) In so doing, Berryman offered opinions as to whether Bedlam: complied with its contract with Plaintiffs; complied with industry standards; failed to keep Plaintiffs apprised during the construction process; and failed to cooperate with State Farm. (*Id.* at 24-31.) Plaintiffs argue that State Farm owed them a non-delegable duty of good faith and fair dealing and that, therefore, the actions of third parties, like Bedlam, is irrelevant. (ECF No. 62 at 9-10.) As noted above, Berryman's analysis of the work performed by Bedlam and the estimates provided by it and Express are directly relevant to the extent of damages suffered by Plaintiffs in this case.

Moreover, State Farm argues in its defense of this case that it "determined that the estimates submitted by Plaintiffs' contractors were not reasonable and State Farm needed further information to evaluate the claim." (ECF No. 77 at 4.) Plaintiffs may dispute whether that, in fact, occurred. But, Berryman's opinions regarding insurance industry standards and whether Bedlam kept the parties informed under ordinary contractor-of-choice procedure may assist the jury in understanding the evidence and deciding the factual issues raised in State Farm's defense.[5]

Berryman's testimony as to whether Bedlam complied with its contract with Plaintiffs is a closer call. In general, "an expert may not attempt to define the law that a fact-finder must follow or 'direct the jury's understanding of the legal standards upon which their verdict must be based . . . .'" *Magallan v. Zurich Am. Ins. Co.*, No. 16-CV-0668-CVE-FHM, 2017 WL 4012964, at *10 (N.D. Okla. Sept. 12, 2017) (quoting *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988). And, Plaintiffs are correct that the issue of

---

[5] Any decision under Rule 403 as to whether the probative value of this evidence is outweighed by the risk of confusion or unfair prejudice can be determined upon a proper objection at trial.

9

whether Bedlam breached their contract is not directly before the Court. However, in the context of Berryman's opinions, the Bedlam contract is only mentioned for two purposes (1) showing that Bedlam's contract illustrates the industry standards noted by Berryman; and (2) pointing out Bedlam's purported failures to follow these standards.[6] (*See* ECF No. 62-1 at 26-27.) The jury in this case will not be asked to determine whether Bedlam breached its contract with the Boones. Instead, the jury will be asked to determine whether the Boones' damages were caused by State Farm's breach (and not by Boones' contractor performing excessive work) and whether State Farm unduly delayed its payment on the claim in bad faith (and not because the Boones' contractor failed to provide necessary information in a timely fashion). The Court will not preemptively exclude Berryman's testimony on this basis. However, the parties may revisit this issue with the district judge at trial, as well as whether undue confusion is being created by a trial-within-a-trial.

D.   **Credibility/Reliability of Witnesses**

Finally, Plaintiffs argue Berryman's testimony is not helpful to the jury, because it usurps the jury's role in making determinations as to credibility and reliability. (ECF No. 62 at 6, 12.) Plaintiffs cite no legal support for this argument. To the extent Berryman's

---

[6] "Bedlam's contract with Boone . . . further demonstrates these common industry parameters. Bedlam . . . was contractually empowered by Boone to communicate with State Farm . . . . Bedlam had limited and generally unproductive contact . . . . In the end Bedlam proceeded with a repair scope that was not approved. This was ill-advised and contrary to common practices." (ECF No. 62-1 at 26.) "Bedlam's contract also included the . . . provision that . . . effectively gives Bedlam and Boone the assurance that there will not be work performed that has not been considered and approved by Boone's insurance carrier. Such contract language and method of operation is common in the property restoration industry: . . . . Bedlam failed in this regard and performed work ahead of State Farm's and Boone's concurrence, some of which was unnecessary. This contributed to Bedlam's invoices exceeding State Farm's estimates and left Boone with a shortfall in funds." (*Id.* at 26-27.)

testimony goes to the substance of other experts' opinions or the reliability of estimates of damages in this case, the Court has already rejected such argument above.

To the extent Plaintiffs are arguing that Berryman's testimony impermissibly comments on the credibility of other witnesses at trial, that argument is rejected. "The credibility of witnesses is generally not an appropriate subject for expert testimony." *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993). This kind of testimony is prohibited because it: "(1) usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility; and (3) when provided by impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (internal quotations omitted). In insurance claim disputes, this Court has held a credibility determination is not being made when an expert reviews the relevant materials and finds fault with an opposing party's repair estimate. *Wilson v. State Farm Fire & Cas. Co.*, No. 21-CV-0062-CVE-SH, 2022 WL 1555816, at *10 (N.D. Okla. May 17, 2022) (explaining that, after conducting a review of relevant materials, an expert's finding that an opposing party's estimate was inflated is permissible rebuttal evidence and is not a credibility determination).

After reviewing Berryman's report, the Court does not find Berryman to be making an impermissible credibility determination—that is, Berryman is not opining as to whether or not certain persons are truthful or that their statements are believable. Instead, Berryman's report addresses his opinion as to the quality and accuracy of others' work and provides rebuttal evidence to Plaintiffs' alleged damages. *See id.* at *10. Berryman can testify to the reliability of the estimates provided by Express, and Bedlam can explain why the estimates were faulty.

11

**III.     Basis in Sufficient Facts or Data**

Plaintiffs' last argument appears to relate more closely to whether Berryman's testimony is based on sufficient facts or data. That is, Plaintiffs assert that Berryman relies on "inaccurate and incomplete information in arriving at several of his opinions, rendering the entirety of his opinions unreliable." (ECF No. 62 at 6.) Plaintiffs complain that Berryman did not consider the depositions of State Farm Team Manager Roger Clark and State Farm corporate representative Brett Barthelme.[7] (*Id.* at 12-13.) Defendant responds that Berryman could not have considered these depositions in his report, because he did not receive the deposition transcripts in time. (ECF No. 77 at 6-7.) Regardless, Defendant insists if Berryman's opinions would have changed based on this deposition testimony, he would have provided a supplemental report. (*Id.* at 7.)

The Court's purpose when considering a challenge to expert testimony "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Rule 702 was recently amended to avoid a prior, incorrect application of the rule, where "courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." Fed. R. Evid. 702, advisory ctte.'s note, 2023 ams. This does not mean, however, that an expert must consider every possible fact in the case (including facts unknown at the time the opinion is issued). *See, e.g., id.* ("For

---

[7] Plaintiffs also complain that Berryman inaccurately stated a public adjuster did not provide a detailed estimate until September 2020 when, in fact, the public adjuster provided a detailed estimate in August 2020. (ECF No. 62 at 13.) Plaintiffs do not explain how this one error renders any of Berryman's opinions unreliable, much less all of them.

example, if the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility."); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Plaintiffs offer no details on what was in Clark or Barthelme's testimony that would make any difference to the conclusions reached by Berryman. Having reviewed Berryman's report, the Court finds it more likely than not that Berryman has a sufficient basis to support his opinion. Having found the opinion admissible, any additional arguments regarding the information Berryman did not consider simply goes to the weight of his evidence.

IT IS THEREFORE ORDERED that *Plaintiffs' Motion to Strike Defendant's Expert Michael Berryman and His Expert Report* (ECF No. 62) is DENIED.

ORDERED this 7th day of December, 2023.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT